| | |
|---|---|
| **AKM INTERNATIONAL, LLC and CHUN-CHIEN LIN,**<br><br>　　　　**Plaintiffs,**<br><br>v.<br><br>**JERRY CHEN, LASH VOLKSWAGEN, INC., NEW COUNTRY AUDI, INC., and MGD, LLC,**<br><br>　　　　**Defendants.** | Civ. No. 14-2111 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiffs AKM International, LLC ("AKM") and Chun-Chien Lin ("Mr. Lin") (collectively, "Plaintiffs") bring this action against Defendants Jerry Chen ("Mr. Chen"), Lash Volkswagen, Inc., MGD, LLC ("MGD"), and New Country Audi Motor Cars of Greenwich, Inc. ("New Country").[1] The Complaint, in eight counts, asserts claims of tort and breach of contract arising from the defendants' alleged incomplete performance of a contract to deliver several BMW motor vehicles. Essentially, Plaintiffs contend that Jerry Chen sold them some new BMWs (for resale to a third party in China), which he failed to deliver. The issue on this motion is whether Mr. Chen was acting as the actual or apparent agent of New Country when he did that. Now before the Court is Defendant New Country's motion (ECF no. 30)[2] for summary judgment.

---

[1]　　Defendant New Country was improperly pled as "New Country Audi, Inc."

[2]　　Record items cited repeatedly will be abbreviated as follows:
　　　　"Compl." =　　　　Complaint (ECF no. 1-1)
　　　　"Def. Mot." =　　　　Defendant New Country Motor Cars of Greenwich, Inc.'s Brief in Support of Motion for Summary Judgment (ECF no. 30-2)

For the reasons set forth below, the evidence fails to raise any material issue of fact as to the viability of Plaintiffs' claims against New Country. Summary judgment in favor of New Country on all counts will be granted.

## I.   BACKGROUND

Plaintiff Chun-Chien Lin is the sole principal and owner of AKM, a New Jersey limited liability company. (Def. Facts ¶¶ 2–4) New Country is an Audi motor vehicle dealership located in Greenwich, Connecticut. (*Id.* ¶ 1) Connecticut's motor vehicle laws prohibit New Country, as an Audi dealership, from selling new BMWs.[3] (*Id.* ¶ 36) Defendant MGD is a Connecticut limited liability company. (*Id.* ¶ 7)

On October 7, 2011, Defendant Jerry Chen,[4] a New Country salesperson, left work early and never returned to New Country. (Pl. Opp. Ex. F) A week later, on October 14, 2011, Mr. Chen offered to sell the Plaintiffs eight[5] new BMW X5 motor vehicles (the "BMWs"). (*Id.* ¶ 16) On that date, Mr. Chen sent an e-mail message from his New Country e-mail account to Mr. Lin, offering "MSRP [manufacturer's suggested retail price] less $750 off only for you my brother." (Pl. Opp. Ex. D)

---

| | |
|---|---|
| "Pl. Opp." = | Plaintiffs AKM International, LLC. and Chun-Chien Lin, Brief in Response to Defendant (New Country Audi's), Motion for Summary Judgment (ECF no. 31) |
| "Def. Reply" = | Defendant New Country Motor Cars of Greenwich, Inc.'s Reply Brief in Support of Motion for Summary Judgment (ECF no. 32) |
| "Def. Facts" = | Defendant New Country Motor Cars of Greenwich, Inc.'s Local Rule 56.1 Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (ECF no. 30-1) |
| "Pl. Facts" = | Plaintiff AKM International, LLC. and Chun-Chien Lin's Local Rule 56.1 Statement of Undisputed Material Facts in Response to Motion for Summary Judgment (ECF no. 31-6) |

[3]    New Country is permitted to sell used BMWs. (*See* Def. Mot. Ex. I, Mackey Dep. 210:21–25)

[4]    Jerry Chen is also known as Gee Chen. (*See, e.g.*, Def. Mot. Ex. H)

[5]    In the Complaint, Plaintiffs allege that only seven BMWs were offered for sale, but now, after discovery, they state that the number was in fact eight. (Def. Facts ¶ 16)

Mr. Chen testified that Mr. Lin was not the "ultimate purchaser" but a reseller or agent. (Def. Mot. Ex. D, Chen Dep. 91:5–7) The client of Lin and MGD, *i.e.,* the ultimate purchaser of the eight new BMWs, was a third party in China.[6] On October 14, 2011, that Chinese third party made a $70,000 wire transfer payment to MGD. (Def. Facts ¶¶ 17–19; Pl. Facts ¶¶ 17–19) Subsequently, the same client made four additional wire transfer payments, totaling $453,400, to MGD's account. (*Id.* ¶¶ 18–19) And the communications between Mr. Chen and Plaintiffs regarding the BMWs, said Chen, had "nothing to do with New Country." (Def. Mot. Ex. D, Chen. Dep. at 110:15–24). (Def. Facts ¶ 21)

Five of the BMWs were delivered to the Plaintiffs as promised. (Pl. Facts ¶ 22) Those vehicles were purchased from various BMW dealerships: BMW of Westchester, Hassel BMW, or BMW of New London.[7] (Def. Facts ¶ 34) None of those delivered vehicles, testified Mr. Chen, were purchased from New Country. (Def. Facts ¶ 29)

The remaining three BMWs—the ones that were *not* delivered as promised—are the subject of Plaintiffs' Complaint. Those three did not come from New Country, either. Rather, individuals from Clifton, NJ, Bensalem, Pennsylvania, and West Sayerville, New York purchased those BMWs from Hassel BMW. (Def. Facts ¶¶ 30, 35; Pl. Facts ¶ 30)

Mr. Lin testified that he never signed a contract with, received an invoice from, or transferred money to, New Country. (Def. Facts ¶ 25) Plaintiffs have offered no evidence that New Country had any control over the payments wired to MGD. Nevertheless, Mr. Lin states that he believed Mr. Chen was acting on

---

[6]     Actually, Plaintiffs produced documentation concerning only four of the BMWs. Neither Mr. Lin's name nor AKM's name appears in any of those documents. (Def. Facts ¶¶ 23–24)

[7]     Plaintiffs contend that Mr. Chen and MGD were agents of, or somehow affiliated with, New Country. They do not allege any other connection between New Country and these sales. (Pl. Facts ¶ 34)

behalf of New Country and that MGD was a part of New Country.[8] (Pl. Facts ¶¶ 17–18, 25) The plaintiffs contend that Chen acted as New Country's employee or agent in the transaction. (*See* Pl. Facts ¶¶ 20 – 21, 24, 26, 29, 31–35)

Although Mr. Chen did not formally resign from New Country, there seems to be no dispute that he quit at some point. According to a November 2, 2011 letter from then-New Country General Sales Manager Mark DeMarsico, Mr. Chen was removed from New Country's payroll as of October 31, 2011 for job abandonment. Mr. DeMarsico's letter describes the circumstances leading to the termination of Mr. Chen's employment at New Country:

> On Friday October 7th 2011 Gee Chen texted messaged Julia Glaser here at New Country Audi Sales stating he was leaving early from work he was not feeling well, he followed up on Saturday October 8th that [h]e was going to be in the hospital for a few days and has not returned to work since.

> I Mark DeMarsico the general sales manager have called his cell phone several times to question whether he was returning to work or not and Mr. Chen has not returned any of the calls. He has contacted David Uva to say he was still not feeling well and to question him about deals. He has not called or contacted any of the management staff making us aware he was not coming in or coming back to work.

> I requested and have waited for three weeks to receive a letter from him regarding a leave of absence for medical reasons and have received nothing, As of October 31st 2011 Gee Chen should be removed from payroll for job abandonment.

> Mark DeMarsico

> General Sales Manager

> New Country Audi

---

[8]     At his deposition, Mr. Lin explained that "In my mind, I still deal with New Country Audi." (Pl. Facts ¶ 25) (quoting Lin Dep. 56:21–23) Mr. Lin did not ask Mr. Chen any questions about MGD, and instead "assume[d] that [MGD] is an internal change for New Country Audi," because it was his understanding that Mr. Chen was working for New Country. (Lin Dep. Tr. at 55:14–21; 56:21–25) Mr. Lin based that understanding, at least in part, on the fact that Mr. Chen had sent him the offer e-mail from a New Country e-mail address and that Mr. Lin would call Mr. Chen at his New Country Audi phone number if he could not reach him at his cellular phone number. (*Id.* at 57:8–14)

(Def. Mot. Ex. H)

Mr. Chen began working at Lash Auto Group shortly after leaving New Country. This is corroborated by evidence that on October 21, 2011, Lash Volkswagen direct-deposited $450 into Chen's HSBC checking account. (Def. Facts ¶ 27; Def. Mot. Ex. F) Chen testified at his deposition that he was employed at Lash Volkswagen when all of the wire transfers from Plaintiffs' client to MGD for the BMWs occurred, all the way back to the first transfer on October 14, 2011. (Def Facts ¶ 28; *see also* Chen Dep. 154:1–13)

On January 17, 2014, New Country filed a complaint in Connecticut State Superior Court against a former employee, David Uva. New Country's claim arose from a scheme in which Uva allegedly sold Audi automobiles from New Country to an export buyer, in violation of Audi and New Country policies. (Pl. Opp. Ex. A) In that state court complaint, New Country alleged that Uva and his co-conspirators received payments from the export buyers through MGD, which, at a profit, supplied Audi automobiles that MGD purchased from New Country. (*Id.*) Relatedly, on December 1, 2014, New Country filed a complaint against Mr. Uva in bankruptcy court in the District of Connecticut, seeking to have Uva's liability to them declared non-dischargeable. (Pl. Opp. Ex. B)

On February 10, 2014, Plaintiffs filed the Complaint in this action in New Jersey state court. (Def. Facts ¶ 8) On April 4, 2014, New Country removed the action to federal court. To date, Plaintiffs have not served process on Defendants MGD and Lash Volkswagen. (*Id.* ¶ 10)

On November 18, 2016, New Country filed its motion for summary judgment. (ECF no. 30) That motion is now before the Court.

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Kreschollek v. S. Stevedoring Co.,* 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. 2548.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson,* 477 U.S. at 248, 106 S. Ct. 2505; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial.").

## B. Analysis

### 1. Breach of Contract, Breach of Contract Implied at Law, and "Specific Performance: Delivery of Goods and Services" (Counts 1–3)

#### a. Breach of Contract

Plaintiffs allege that, of the eight new BMWs that were promised, New Country failed to deliver three. Under New Jersey law, a breach of contract claim has three essential elements: (1) the existence of a valid and enforceable contract between the parties, (2) a breach of that contract, and (3) damages. *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007); *accord Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007).

As to Counts 1–3,[9] New Country argues that the breach of contract claims founder on the first element: the existence of an enforceable contract between New Country and Plaintiffs. To establish the existence of a valid contract of sale, "Plaintiff must show mutual assent, consideration, legality of the object of the contract, capacity of the parties and form[ality] of memorialization." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006) (citing *Cohn v. Fisher,* 118 N.J. Super. 286, 291, 287 A.2d 222 (1972)).

New Country argues that there is no evidence that it ever made an offer to Plaintiffs to sell the BMWs or that Plaintiffs formally accepted such an offer. (Def. Mot. 8) Indeed, aside from Plaintiffs' repeated assertions that Mr. Chen was acting on New Country's behalf, there is no evidence connecting New Country to any agreement to sell the BMWs to Plaintiffs or their Chinese clients. It is undisputed that Plaintiffs never signed a contract with, received an invoice from, or transferred money to, New Country. (Def. Facts ¶ 25) It is

---

[9]     Count 3, titled "Specific Performance: Delivery of Goods and Services," appears to be a variation on the breach of contract claim (Count 1), differing only in that it requests the equitable relief of specific performance. I therefore address these counts together. Neither party directly elucidates the elements of a claim for breach of a contract implied at law (Count 2). I address that claim in Section II.B.1.b, *infra*.

further undisputed that Plaintiffs were not the "ultimate purchaser[s]" of the BMWs, and that the communications between Mr. Chen and Plaintiffs regarding the BMWs had "nothing to do with New Country." (Def. Facts ¶ 21) The VINs of the five BMWs that were delivered—which Plaintiffs allege were purchased from New Country—demonstrate that they were *not* sold by New Country, but by BMW of Westchester, Hassel BMW, or BMW of New London. (Def. Facts ¶ 34) The three BMWs that were not delivered —allegedly in breach of some contract with New Country—were all sold by Hassel BMW, not New Country. (Def. Facts ¶¶ 30, 35; Pl. Facts ¶¶ 30, 35)

Plaintiffs thus have no alternative but a theory of agency or apparent authority. They hang their hats on the contention that Mr. Chen was New Country's employee or agent—or, at least, that he appeared to be. (Pl. Opp. 10–11; Pl. Facts ¶¶ 20 – 21, 24, 26, 29, 31–35) Even assuming that Chen had quit working for New Country, the Plaintiffs claim that they reasonably relied on his apparent authority to act on New Country's behalf. As an abstract legal matter, they are correct: where an agent or other actor does not have actual authority to affect a principal's legal relations with a third party, an agent or actor may nevertheless possess apparent authority. *New Jersey Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.*, 203 N.J. 208, 220, 1 A.3d 632, 639 (2010); *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993); Restatement (Third) Of Agency § 2.03 (2006). Where the theory falls apart is not on the law but on the facts.

Plaintiffs point out that the October 14, 2011 e-mail message from Mr. Chen originated from his New Country e-mail. In that message, Chen offered Mr. Lin "MSRP [manufacturer's suggested retail price] less $750 off only for you my brother." (ECF no. 31-5 at 1) Lin also testified that he would contact Mr. Chen at his New Country phone number if he could not reach him at his cellular phone number.[10] (Lin Dep. 57:8–14) New Country, for its part, argues

---

[10]     Mr. Lin also testified that when he called Mr. Chen at New Country during the "period of time when I purchased . . . the BMW X5 from him. . . . Even when he . . .

8

that Mr. Chen abandoned his job at New Country on October 7, 2011, and had begun employment at Lash Volkswagen by the time he made any offer of the BMWs to Plaintiffs. In response, Plaintiffs point to the fact that Mr. Chen remained on New Country's payroll through October 31, 2011.

These facts suggest that that Mr. Chen's *apparent* authority to act on behalf of New Country might have lingered during the time period in which he contracted with Plaintiffs to sell the BMWs. That might be so even if his employment—and thus his *actual* authority to contract on New Country's behalf—ended when he abandoned his job on October 7, 2011. *See* Restatement (Third) Of Agency § 3.11 cmt c (2006)("An agent's apparent authority may survive or linger after the termination of actual authority . . . because [a]pparent authority protects third parties who interact with an agent on the basis of the principal's prior manifestation and who lack notice that the agent's actual authority has terminated.").[11] In short, there might be a triable issue of fact if Chen's status as an actual or apparent agent of New Country as of a particular date were a consequential issue.

However, Mr. Chen's agency status after October 7, 2011, is not a consequential issue. The evidence is undisputed that, even when employed by New Country, Mr. Chen lacked both actual and apparent authority to sell new BMWs on New Country's behalf. True, as a New Country employee or agent,

---

was not in the office, the operator . . . always told me that he's out in the field. They never told me that he's no longer with New Country Audi." (Lin Dep. 111:11–18)

[11]  As the Restatement explains:

> Often termed "lingering authority," the doctrine stated in this section recognizes that it is reasonable for third parties to assume that an agent's actual authority is a continuing or ongoing condition, unless and until a third party has notice of circumstances that make it unreasonable so to assume. These circumstances include notice that the principal has revoked the agent's actual authority, that the agent has renounced it, that the agent's authority was limited in duration or to a specific undertaking, or that circumstances otherwise have changed such that it is no longer reasonable to believe that the principal consents to the agent's act on the principal's behalf.

Restatement (Third) Of Agency § 3.11 cmt c (2006).

Mr. Chen had actual and apparent authority to sell motor vehicles from New Country's inventory. Nevertheless, there is no evidence establishing a triable issue whether Mr. Chen ever possessed actual or apparent authority to sell *new BMWs* on New Country's behalf.

First, I consider actual authority. New Country has stated that it "cannot sell, does not sell, and is not authorized to sell new BMW motor vehicles." (Def. Facts ¶ 33; *see* Pl. ¶ 36) Under New Country's billing system "[i]t is impossible for New Country Audi or any of its sales force to sell new BMW motor vehicles." (Def. ¶ 37) Plaintiffs do not deny that New Country isn't an authorized dealer of new BMWs; they just allege that New Country somehow sold new BMWs anyway. (*See* Pl. ¶ 37.) But although Plaintiffs assert that New Country has in fact sold BMWs, those allegations are unsubstantiated; they are not supported by any evidence sufficient to create a genuine issue of material fact.[12]

---

[12]    Using circular logic, Plaintiffs assert that New Country had the ability to sell new BMWs because Mr. Chen was authorized to make such sales on New Country's behalf. (Pl. Facts ¶ 37) They cite no evidence for such authorization, however.

Plaintiffs also claim that New Country has admitted that Mr. Chen, "along with New Country's on-site management team had the authority to approve" sales of new BMWs. (*Id.* ¶ 33) The "admissions" to which Plaintiffs refer are a State court complaint (and a related complaint in bankruptcy court) that New Country filed in 2014 against their former employee, David Uva, for a 2009 scheme to defraud New Country though the unauthorized sale for export of Audi vehicles. There is no indication that Mr. Chen was involved in that alleged scheme, or that any of the vehicles sold by Mr. Uva were new BMWs (or any other new non-Audi vehicle). Thus, these court documents do not provide any support to Plaintiffs' contention that Mr. Chen, or anyone else at New Country, was authorized or able to sell new BMWs.

Although Plaintiffs do not cite it, I consider Mr. Lin's deposition testimony that he had at some earlier time purchased a new BMW from New Country through Mr. Chen. (Lin Dep. 91:7 – 94:18) There is less to that testimony than meets the eye, however. Mr. Lin initially stated that, "I *think maybe* [I] b[ought] one BMW from [Mr. Chen] before." (*Id.* at 92:13–14; emphasis added) After asked by New Country's counsel whether he was sure, Mr. Lin replied that he was sure, that it was a new car, and that he paid for the purchase by wire transfer to New Country. (*Id.* at 92:11 – 93:16) Mr. Lin could not recall the year in which the purchase occurred. (*Id.* at 92:23 – 93:-1) Mr. Carkhuff, counsel for New Country, then made a document production request on the record for "any documents to establish plaintiff purchased a new BMW from New Country Audi at any time, and again, we will produce what we have." (*Id.* at 94:13–17) Plaintiffs have presented no evidence to substantiate Mr. Lin's testimony.

Second, Mr. Chen similarly lacked apparent authority to sell new BMWs on New Country's behalf. The essentials of apparent authority are well-established under New Jersey law:

> The question in every case depending upon the apparent authority of the agent is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority *to perform the particular act in question.*

*King v. Estate of Senn*, No. A-3013-07T3, 2008 WL 5331891, at *3 (N.J. Super. Ct. App. Div. Dec. 23, 2008) (emphasis added) (quoting *C.B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co. of Newark*, 14 N.J. 146, 154 (1953)); *see also Automated Salvage Transp., Inc. v. NV Koninklijke KNP BT*, 106 F. Supp. 2d 606, 618–19 (D.N.J. 1999); *Farmers & Merchants Nat. Bank v. San Clemente Fin. Grp. Sec., Inc.*, 174 F.R.D. 572, 580 (D.N.J. 1997). Here, the "particular act in question" is Mr. Chen's alleged contracting on New Country's behalf for the sale of new BMWs.

I hold as a matter of law on this factual record that no reasonable party in the business of buying and selling automobiles could have concluded that Mr. Chen possessed the *particular* authority to sell new BMWs on behalf of New Country, which did not itself have the authority to sell new BMWs. In many cases, apparent authority may present a factual issue; the question "whether a reasonable person in the position of a third party would believe that an agent had the authority or the right to do a particular act" is generally "a question for the trier of fact." Restatement (Third) Of Agency § 2.03 (2006); *see also Gizzi v. Texaco, Inc.*, 437 F.2d 308, 310 (3d Cir. 1971) ("Questions of apparent authority are questions of fact and are therefore for the jury to determine."). Here, however, there is no evidence that New Country acted in a way that

---

The purchase, if it occurred, would be an ascertainable fact, just as New Country's status, or not, as an authorized BMW dealer is an ascertainable fact. No evidence, however, was forthcoming, and no reasonable factfinder could credit Lin's stray, vague oral representation in light of the documentary record.

would lead Plaintiffs to hold a *reasonable* belief that New Country had authorized Mr. Chen to sell new BMWs on New Country's behalf.

"[A]s a general matter there is no requirement that the third party inquire into the scope of an agent's authority." Restatement (Third) Of Agency § 2.03 cmt d (2006). However, "if material doubt arises" as to whether "the proposed transaction appears to be reasonably related to the principal's known business," then it is "ordinarily . . . reasonable to inquire further about the extent of the agent's authority." *Id.* At the time of their dealings with Mr. Chen regarding the sale of the BMWs, Plaintiffs knew of many facts that would have led "a person of ordinary prudence, conversant with business usages and the nature of the particular business" to doubt, or at least to inquire into, Mr. Chen's authority to sell new BMWs on New Country's behalf.[13]

The Plaintiffs were in the business of buying and selling motor vehicles, and they were familiar with the Connecticut motor vehicle market. Mr. Lin testified, for example, that he had been purchasing cars through Mr. Chen since at least 2007. (*See* 91:16–17) No reasonable purchaser of new motor vehicles in Connecticut, familiar with the local motor vehicle market, would believe that a New Country salesperson was authorized to sell new BMWs. Plaintiffs concede that Connecticut's motor vehicle laws *prohibit* New Country, as an Audi dealership, from selling new BMWs. (Pl. Facts ¶ 36) And, as discussed above, there is no evidence that New Country ever *did* sell new BMWs.

Mr. Lin did testify to a subjective belief: "In my mind, I [was] still deal[ing] with New Country Audi." (Pl. Facts ¶ 25, quoting Lin Dep. 56:21–23) But that

---

[13]     Although Plaintiffs assert that they made the payments to MGD with the "understanding that MGD was in fact a part of New Country Audi . . . based upon the misrepresentations of Mr. Chen," (*e.g.*, Pl. Facts ¶ 18), Mr. Chen's misrepresentations cannot create apparent authority. *Indagro v. Nilva*, No. CV 07-3742 (MCA), 2016 WL 3574330, at *8 (D.N.J. June 30, 2016) ("The focus is on the principal's acts and statements; the agent's unilateral, unauthorized representations do not create apparent authority.") (citing *Wilzig v. Sisselman*, 209 N.J. Super. 25, 36, 506 A.2d 1238 (App. Div. 1986)).

belief, under the law, must be a reasonable one. Lin stated, with no evidentiary support, that he simply "assume[d] that [MGD] is an internal change for New Country Audi."[14] There is no evidence, however, that Lin ever even asked. Rather, his sole basis for this assumption was his prior assumption that Mr. Chen was acting as an agent for New Country. (Lin Dep. Tr. at 55:14–21; 56:21–25) And that prior assumption regarding Lin, for the reasons already discussed, is an inadequate basis to bind New Country.

As stated above, no reasonable purchaser could have concluded that New Country itself—through Mr. Chen, or through anybody—possessed the authority to sell new BMWs. In addition, and in the alternative, I observe that there were many facts that would have created a duty to inquire further as to Chen's authority. True, the Plaintiffs offer testimony that Chen continued for some time to use a New Country e-mail address, or that New Country did not state when answering the phone that Chen had left their employment. But consider the following facts, as Plaintiffs should have done: The Plaintiffs never signed a contract with, received an invoice from, or transferred money to New Country in relation to the sale of the BMWs. In the course of prior business with Mr. Chen and MGD shortly after MGD's creation, Chen yelled at Lin for accidentally wiring money to New Country instead of MGD—inexplicable if, as Lin now says, MGD was just another name for New Country. (Pl. Facts ¶ 26) (citing Lin Dep. 58:1–21) All of the eight BMWs in fact came from dealerships other than New Country. In short, there were none of the usual indicia of a contract to buy cars from New Country, a common enough commercial transaction that would routinely be the subject of clear and unmistakable documentation.

So—even setting aside the fact that any reasonable person in the automobile business in Connecticut would have understood that New Country itself was legally barred from selling new BMWs—Plaintiffs' claim would be

---

[14]    The sense of "change," as used here, seems to be "name change."

doomed by their failure to conduct any reasonable inquiry as to the extent of Mr. Chen's authority to sell new BMWs on New Country's behalf via MGD. No reasonable factfinder could conclude that Plaintiffs' assumption that Mr. Chen had such authority was justified. The doctrine of apparent authority does not protect third parties so conveniently "deceived" or willfully blind.

As a matter of law, Mr. Chen lacked actual or apparent authority to bind New Country in a contract for the sale of the BMWs. Accordingly, I will grant summary judgment in favor of New Country on Counts 1 and 3.

### b. Breach of Contract Implied at Law

Neither party directly states the elements of a claim for breach of a contract implied at law (Count 2). Nevertheless, it is readily apparent that Plaintiffs' claim for breach of implied contract fails as a matter of law.

The New Jersey Supreme Court has described the nature of a claim of a contract implied-in-law in terms that rule out the Plaintiffs' claim here:

> In essence, a contract action implied-in-law is a restitutionary claim. Like the equitable doctrine of restitution, the key element of a quasi-contract claim is that one party has been unjustly enriched at the expense of another. Recovery under both doctrines is typically measured by the amount the defendant has benefitted from the plaintiff's performance.

*Wanaque Borough Sewerage Auth. v. Twp. of W. Milford,* 144 N.J. 564, 575, 677 A.2d 747 (N.J. 1996). As a result, "there are only two 'essential elements' of a contract implied in law: '(1) that the defendant has received a benefit from the plaintiff,' and '(2) that the retention of the benefit by the defendant is inequitable.'" *Id.* (quoting Judy Beckner Sloan, *Quantum Meruit: Residual Equity in Law,* 42 DePaul L. Rev. 399, 408 (1992) (citing Frederic C. Woodward, *The Law of Quasi Contracts* 9 (1913))).

Here, those two essential elements are absent. In particular, there is no evidence demonstrating that New Country received any benefit whatever from the funds that Plaintiffs' client in China wired to MGD as deposits or payments for the BMWs, which, remember, were not obtained or purchased from New Country at all.

14

Accordingly, I will grant summary judgment for New Country on Count 2.

### 2. Common Law Fraud, Fraud in the Inducement, and Consumer Fraud (Counts 4–5, 8)

Plaintiffs' fraud-related claims rely on the same facts and allegations as their contract claims. They appear to be little more than contract claims dressed up as fraud. Those fraud claims fail for several reasons.

### a. The Elements of the Fraud Claims

First, Plaintiffs fail even to allege their fraud claims with the particularity required by Federal Rule of Civil Procedure 9(b). Still less do they demonstrate a genuine issue of material fact by supporting the elements of their fraud claims with evidence. Fundamentally, Plaintiffs' Complaint and summary judgment submissions fail to specify the nature of any misrepresentation, deception, or unconscionable business practice that any defendant directed at Plaintiffs.

A plaintiff's claim of common law fraud or fraud in the inducement cannot succeed unless it pleads and proves a particular misrepresentation or omission. *See Zorba Contractors, Inc. v. Hous. Auth., City of Newark*, 362 N.J. Super. 124, 139, 827 A.2d 313, 322 (App. Div. 2003) (that "defendant made a material misrepresentation or omission of fact" is an essential element of common law fraud); *Rotante v. Franklin Lakes Bd. of Educ.*, No. CIV.A. 13-3380 JLL, 2014 WL 1266238, at *4 (D.N.J. Mar. 26, 2014) ("a material misrepresentation [or omission] of a presently existing or past fact" is an essential element of fraudulent inducement claim) (citing *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 610, 691 A.2d 350 (1997)).

Similarly, to succeed in their Consumer Fraud Act claim, a plaintiff must plead and prove

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that

others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . .

N.J. Stat. Ann. § 56:8-2.

The Complaint here does not identify any act by any party that would satisfy the first element of a fraud claim. Further, the summary of facts in Plaintiffs' summary judgment opposition papers lacks any allegation of a misrepresentation or omission. Rather, it reads as a garden-variety breach of contract, with the label of fraud slapped on:

> On October 14, 14, 2011, Plaintiffs, in good faith, purchased the subject vehicles from Defendant, New Country Audi's on-site management team and key salesman who utilized both New Country Audi's business premises and "banner" (name) in furtherance of the transaction. The funds were tendered by Plaintiffs to MGD. (See Defendants Undisputed Statement of Material Facts #18). Four (4) vehicles were not delivered to Plaintiffs.

(Pl. Opp. 14–15) Plaintiffs cite in addition to the Connecticut Superior Court and U.S. Bankruptcy Court proceedings that New Country initiated against David Uva. (Pl. Opp. 13–14) These citations to separate matters involving Uva shed no light on what misrepresentations, if any, Mr. Chen or New Country made to Plaintiffs in connection with the sale of the BMWs.

Plaintiffs have presented no evidence sufficient to create a triable issue as to each element of their fraud claims. Summary judgment will be granted in New Country's favor on Counts 4, 5, and 8.

### b. Vicarious Liability

Second, and in the alternative, even a validly alleged and proven fraud claim against Mr. Chen would fail as against New Country. There is no sufficient evidence that New Country is vicariously liable for Chen's conduct. For these purposes, I will assume *arguendo* that Mr. Chen remained, or reasonably appeared to remain, a New Country employee during the sale of the BMWs and that he made some fraudulent misrepresentation or omission. Even

16

so, Plaintiffs cannot succeed under theories of either *respondeat superior* or apparent authority in holding New Country vicariously liable.

Under New Jersey law, to succeed in establishing a claim under the doctrine of *respondeat superior*, a "plaintiff must prove (1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." *Carter v. Reynolds*, 175 N.J. 402, 815 A.2d 460, 463 (N.J. 2003). The New Jersey Supreme Court adopted Restatement (Second) of Agency §§ 228–29 (1958) as the proper framework for assessing the scope of employment. *Carter*, 175 N.J. at 411. The Restatement provides that "[c]onduct of a servant is within the scope of employment if, but only if:

> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master, and
>
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master."

Restatement (Second) of Agency § 228 (1958). Conversely, "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.*

Even if a master-servant relationship existed between New Country and Mr. Chen, no reasonable factfinder could conclude that Mr. Chen acted within the scope of his employment. Plaintiffs have offered no evidence to demonstrate that Mr. Chen was motivated even in part to serve New Country's interests. All the evidence points to the contrary: Mr. Chen appears to have abandoned his job at New Country prior to offering the BMWs for sale, the purchase payments were transferred to MGD, the automobiles in question did not come from New Country, and New Country derived no benefit from the transaction.

To the extent that Plaintiffs seek to hold New Country vicariously liable for Mr. Chen's actions on the basis of apparent authority,[15] I reject that attempt for the reasons stated in Section II.B.1.a, *supra*.

In short, Plaintiffs cannot establish New Country's vicarious liability under theories of *respondeat superior* or apparent authority, and Plaintiffs offer no other plausible theory of liability. For this reason, too, I will grant summary judgment in favor of New Country on Counts 4, 5, and 8.

### 3.    Damage to Business Reputation (Count 6)

Plaintiffs have withdrawn their claim for damage to business reputation. (Pl. Opp. 15) Accordingly, I will grant summary judgment in favor of New Country on Count 6.

### 4.    Conversion (Count 7)

Finally, Plaintiffs admit that they have no evidence to substantiate their claim that New Country Audi took "actual, physical possession of the funds Plaintiffs tendered" to MGD. (Pl. Opp. 15) Nevertheless, they insist that "by allowing and admitting" that the tendered funds were "'pirated away' by [New Country's] on-site management team and key salesman under the guise of MGD, LLC being represented as Defendant, New Country Audi . . . a constructive conversion has in fact occurred." (*Id.*)

As the Third Circuit has stated, "conversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir. 1990) (citing *Life Ins. Co. of Va. v. Snyder,* 141 N.J. Super. 539, 545, 358 A.2d 859 (Passaic County Ct. 1976); *Mueller v. Technical Devices Corp.,* 8 N.J. 201, 207, 84 A.2d 620 (1951);

---

[15]    *See, e.g.*, Restatement (Third) Of Agency § 7.08 (2006) ("A principal is subject to vicarious liability for a tort committed by an agent in dealing or communicating with a third party on or purportedly on behalf of the principal when actions taken by the agent with apparent authority constitute the tort or enable the agent to conceal its commission.").

*McGlynn v. Schultz,* 90 N.J. Super. 505, 526, 218 A.2d 408 (Ch. Div. 1966) (citing 89 C.J.S. *Trover and Conversion* § 1 (1955)), *aff'd,* 95 N.J. Super. 412, 231 A.2d 386 (App. Div.), *cert. denied,* 50 N.J. 409, 235 A.2d 901 (1967)). As discussed above, Plaintiffs have not provided evidentiary support for their contention that New Country was aware of, allowed, or was involved in any way with the wire transfer payments to MGD. Therefore, there is no evidence that New Country had even "constructively" exercised control or dominion over the funds, and Plaintiffs' claim for conversion must fail as a matter of law.

Accordingly, I will grant summary judgment in favor of New Country on Count 7.

## III.    CONCLUSION

The Plaintiffs may have a legal claim against somebody; that issue is not before the Court. That somebody however, is not New Country, which on this record seems to be the proverbial "deep pocket" target of convenience. For the reasons set forth above, New Country's motion for summary judgment is GRANTED as to all counts.

An appropriate Order follows.

Dated: June 14, 2017

_____
HON. KEVIN MCNULTY, U.S.D.J.